AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of

INFORMATION ASSOCIATED WITH FACEBOOK USER ID NUMBER "100036583601992" THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK

Case No. 4:20 MJ 1169 JMB

**SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS**

## APPLICATION FOR A SEARCH WARRANT

I, Special Agent David Rapp, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the NORTHERN District of CALIFORNIA, there is now concealed

SEE ATTACHMENT B - ITMES TO BE SEIZED AND SEARCHED

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18:2251 | Production of child pornography |
| 18:2252A | Receiving child pornography |
| 18:2423(b) | Interstate travel with the intent to engage in unlawful sexual activity with a minor |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days (give exact ending date if more than 30 days: ______) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**I state under penalty of perjury the forgoing is true and accurate.**

*Applicant's signature*

David Rapp, Special Agent, Federal Bureau of Investigation

*Printed name and title*

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: September 4, 2020

*Judge's signature*

City and state: St. Louis, MO

Honorable John M. Bodenhausen, U.S. Magistrate Judge

*Printed name and title*

AUSA: J. ANDERSON

# ATTACHMENT A
## Property to Be Searched

For the period **03/01/2017**, to the date this warrant is received: All messages and other information maintained by **Facebook Inc.** located at 1601 Willow Road Menlo Park, CA 94025 for the Facebook account registered to Facebook Account Identification Number **100036583601992**, for the time period of from **03/01/2017** to the date of this warrant, or logs or records including, but not limited to, to the following:

a. Any correspondence pertaining to the persuasion, inducement, and/or enticement of a minor to engage in any sexual act/contact, including all opened/unopened messages;

b. Any messages, opened or unopened, where the message or the content of the message indicates contact with individuals regarding the sexual exploitation of children including the production, transportation, receipt or possession of visual depictions of minors engaged in sexually explicit conduct;

c. Correspondence between these accounts and any other Facebook account where the content of the message discusses the sexual exploitation of a child including the production, transportation, receipt or possession of visual depictions of minors engaged in sexually explicit conduct, including all opened and unopened messages;

d. Any message, opened or unopened, and any image or video file involving the sexual exploitation of a child including the production, transportation, receipt or possession of visual depictions of minors engaged in sexually explicit conduct which is attached to the message;

e. Any file containing visual depictions of minors engaged in sexually explicit conduct;

f. Any message, opened or unopened, and any image file that appears to contain passwords or information regarding encryption;

g. Any and all transactional information, to include log files (transmission and usage), of all activity of the accounts which includes dates, time, method of connecting, port, dial-up, and/or location, originating Internet Protocol (IP) address and the destination IP address for all opened and unopened email, during the entire period that the account has been active, including buddy lists and terms of service violation reports;

h. Any records of subscriber information, method of payment, or detailed billing;

**i.** Copies of all the above from original storage on whatever form including printouts or digital format. The child pornography evidence should be sent by Federal Express to: **Federal Bureau of Investigation; Attn: SA David Rapp; 2222 Market Street; St. Louis, MO 63103**

**ATTACHMENT B**

**Particular Things to be Seized**

**I. Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS**
**RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, ________________________________, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is ____________________________. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of __________ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c. such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

____________________________ ____________________________________________________
Date Signature

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**
**4:20 MJ 1169 JMB**

I, David Rapp, being duly sworn, do hereby depose and state:

## I. INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation's (hereinafter referred to as "FBI") Violent Crimes Against Children Task Force. I have been a Special agent for over 19 years. I am currently assigned to investigate crimes against children. I have conducted investigations regarding the sexual exploitation of children that involve the use of a computer which has been used to commit a crime in violation of Title 18, United States Code, Sections 2251 and 2252 (sexual exploitation of a child), Title 18, United States Code, Section 2252A (child pornography) and Title 18, United States Code, Section 2421 (transportation with intent to engage in criminal sexual activity. I have been personally involved in the execution of search warrants to search residences and seize material relating to the sexual exploitation of minors including computers, computer equipment, software, and electronically stored information

2. The information contained within this affidavit is based on my training and experience, as well as information related to me by other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Sections 2251, 2252A, 2423(b), including but not limited to the items described on Attachments A and B, which is attached hereto and incorporated herein by reference, will be found within the Facebook Account held by Kenneth Rogers, where the instrumentalities, fruits and evidence of violations of Title 18, United States Code, Sections 2251, 2252A, and 2423(b) relating to material involving the sexual exploitation of minors, including but not limited to the items, as specified further in Attachments A and B, might be found.

3. This affidavit is made in support of an application for a search warrant to search for and seize instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Sections 2251, 2252, 2252A, 2422, and 2423(b), which criminalize, among other things, transferring obscene materials to minors, the production, possession and/or receipt and shipment of child pornography, and transportation of minors across state lines to engage in any sexual activity for which a person can be charged with a criminal offense. The items will be found in the following items that are the subject of the search and seizure applied for in this affidavit are more specifically described in Attachments A and B.

4. This affidavit seeks a warrant to require **Facebook Inc.** located at 1601 Willow Road Menlo Park, CA 94025, to provide the contents of electronic mail and wire communications, including but not limited to, sent and received messages, photographs and videos of **Kenneth (Kenny) Rogers**, who uses the following: **Facebook Account Identification 100036583601992**, for the time period of from **03/01/2017** to the date of this warrant.

5. A warrant rather than a subpoena is necessary to obtain the desired information because **Facebook, Inc.** is arguably an "electronic communications service"' and the contents of an electronic communication held in electronic storage by **Facebook, Inc.** for less than 180 days is arguably protected by the Electronic Communications Privacy Act, 18 U.S.C. §2701 et. seq.

6. Electronic communications service means any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

7. The term "electronic storage" means "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof, and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

## II. STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

8. Title 18, United States Code, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

a. Title 18, United States Code, Section 2703(a) provides, in part:

A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure by a Court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b. Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to

disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the procedures described in the Federal Rules of Criminal Procedure by a Court with jurisdiction over the offense under investigation or equivalent State warrant...

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service –

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c. The government may also obtain records and other information pertaining to a subscriber or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. § 2703(c). No notice to the subscriber or customer is required. 18 U.S.C. § 2703(c)(2).

d. The presence of an officer is not required for service or execution of a search warrant issued in accordance with Chapter 121, Title 18 of the United States Code requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service. 18 U.S.C. § 2703(g).

e. Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter –

(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

f. Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .

(14) "electronic communications system" means any wire, radio, electromagnetic, photo-optical or photo-electronic facilities for the transmission of wire or electronic communications and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

(15) "electronic communication service" means any service, which provides to users thereof the ability to send or receive wire or electronic communications; . .

(17) "electronic storage" means –

a. any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

b. any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## II. BACKGROUND

9. The following terms have the indicated meaning in this affidavit:

a. The term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such a device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device. 18 USC § 1030(e).

b. The term “minor” means any individual under the age of 18 years. 18 USC § 2256(1).

c. “Sexually explicit conduct” means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person. 18 USC § 2256(2).

d. “Visual depiction” includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image. 18 USC § 2256(5).

e. "Child pornography" means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; or such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct. 18 USC 2256 § (8)(A) and (C).

f. "Identifiable minor" means a person who was a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting, or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and shall not be construed to require proof of the actual identity of the identifiable minor. 18 USC § 2256(9).

g. The Internet is a computer communications network using interstate and foreign telephone lines to transmit data streams, including data streams used to provide a means of communication from one computer to another and used to store, transfer and receive graphic image files.

## III. INVESTIGATION

10. As part of ongoing investigations into persons using the internet and cellular phone applications to possess, distribute, and/or produce child pornography and to engage in illegal sexual conduct with minors, an undercover officer (UCO) from the St. Louis County Police Department posted an undercover persona on a cellular phone application known as Grindr. Grindr is a social media application used to meet other persons to engage in sexual conduct. The UCO was aware through previous investigations that Grindr is commonly used in the possession and distribution of child pornography as well as for illegal sexual conduct with minors. The UCO posting on Grindr depicted an adult male into taboo fun and incest. The UCO post indicated that the UCO was looking for incest videos as well. The UCO utilized the screen name "Chad".

11. On 03/31/20, the UCO was contacted by a person using the screen name of "LMK". This person, later identified to be Kenneth Rogers stated "hello" and asked if the UCO had ever been part of an incestuous relationship. The UCO told Rogers "no", but that the he did like incest porn. Rogers asked the UCO if the UCO had any "siblings or kids". The UCO advised Rogers that he did have a younger brother. Rogers asked the UCO how old the brother was and the UCO told him that the brother was 13 years of age. Rogers also asked the UCO if the UCO was "looking for fun". The UCO told Rogers "yes". Rogers asked, "Does he play" (referring to the

brother). The UCO told Rogers "yes". Rogers asked "U play with him" and "Any pics of u two?". The UCO told him that they masturbate to pornography together. Rogers then asked "Mmmmu need someone to fuck him?"

12. Rogers asked the UCO to send him a picture of the UCO and the UCO sent him a body picture of an unidentifiable person. Rogers asked the UCO if the UCO would "ask his brother?" (referring to having sexual relations with Rogers). Rogers also asked the UCO if the UCO had KIK. When the UCO asked why, Rogers stated "So we can talk on there" and "If ur serious about meeting. If not it's whatever". The UCO provided Rogers with an undercover KIK account name.

13. Rogers then contacted the UCO on KIK using the screen name "10th doctor". At the beginning of this chat Rogers asked several times if he could meet the UCO and the UCO's brother so that he could engage in sexual conduct with both of them. Rogers stated that the UCO and the UCO's brother could come to his residence if they wanted to. The UCO told Rogers they would not meet at his residence for the first time. The UCO told Rogers that he knew a person that could get them a free hotel room. The UCO also told Rogers that Rogers would need to text with the UCO's brother directly as well to see what his brother was ok with.

14. While texting on KIK, Rogers also sent the UCO six video files via text. They were described as follows:

a. Video file of two prepubescent females engaged in vaginal and oral sex with an adult male.
b. Video file of two prepubescent males and one minor male engaged in oral sex and masturbation. There is also an adult male receiving oral sex from one of the prepubescent males.
c. Video file of a prepubescent male engaged in vaginal sex with an adult female.
d. Video file of a prepubescent male receiving oral sex from a minor male.
e. Video file of an adult male engaged in anal sex with a minor male.
f. Video file of two prepubescent nude males. One male is engaging in sex with an adult female while the other rubs the breasts of the adult female.

The UCO advised Rogers that he liked the videos and indicated that he would show them to his brother well. The UCO told Rogers that he was going to talk to his brother and would be back to continue chatting in about 15 minutes after talking to his brother.

15. After a short break the UCO entered the chat as his younger, 13 year old brother (Tyler). UCO/Tyler told Rogers that he loved the videos he sent but didn't care for the videos with girls in them. Rogers replied "Ok I'll remember that". Rogers asked UCO/Tyler what he was doing and UCO/Tyler advised that he was masturbating. Rogers asked UCO/Tyler if he would show him and UCO/Tyler said that he doesn't do that. Rogers stated "That's fine" and then asked UCO/Tyler if his brother told him what they had discussed earlier. UCO/Tyler feigned ignorance and Rogers replied

"Well he told me that u wanted to suck some dick, but u were not very comfortable. So I figured we all could meet and I would suck ur dick to ease u into things." UCO/Tyler told Rogers that he wanted to "Suck a dick" but that his brother would not let him suck his penis, to which Rogers responded "U can suck mine and I'll suck urs if u want. I also can offer some weed and beer lol", and "I could let u fuck me also". Rogers then asked UCO/Tyler if he would be interested in meeting and UCO/Tyler told him that he was tired of being a virgin, to which Rogers replied "I can help you loose it". Rogers then again asked that UCO/Tyler send him a picture of his penis. UCO/Tyler told him maybe after we get to know each other. UCO/Tyler then told Rogers that he had to go and then the UCO reverted back to his original persona (Chad) and re-entered the chat. Rogers then stated to UCO that he believed that UCO/Tyler wanted to meet. After a little more conversation, the UCO advised that he needed to go to bed and that ended the chat for the day.

16. Rogers and the UCO continue to talk over the next several days, including a conversation where Rogers says "Well I've done almost every include give golden showers, and shit on people. I've kidnapped and raped. Made someone take a dog dick then suck it after he cam. I've fucked a dog. And more" and "LOL". The UCO told Rogers that he has always wondered what it would be like to kidnap someone. Rogers responded, "I've done it twice. First was a little girl I throw in my truck from a park. Locked her in my basement for like 2 years and used her as I pleased. The other was a lit boy locked him up for 6 months using him." Rogers stated that they could "Knock" the UCO's brother out so he could rape him while the UCO watched. Rogers stated that he would like to take pictures of him raping my brother. This concludes the day's texts.

17. On 06/08/20, UCO/Tyler sent a message to Rogers. Rogers responded later that morning. Rogers stated, "Heard u had ur first time?" UCO/Tyler told him yes. Rogers asked UCO/Tyler if the person ejaculated into his anus and UCO/Tyler told him yes. Rogers asked when we could meet and UCO/Tyler told him that he would have to ask Chad. Rogers stated that he can "host or travel". Rogers then send two images of his penis. Rogers and UCO/Tyler discussed that they could engage in sexual conduct inside Chad's truck while they drove around. UCO/Tyler told Rogers that he might be to "Big" and that he would let him try to have anal sex with him, but Rogers would have to stop if he told him to. Rogers stated that he would stop and that if all they could do was oral sex, then that would be ok. UCO/Tyler told Rogers that he had to go and Rogers stated that they may meet later that night.

18. Later on 06/08/20, the UCO told Rogers that he was able to get a hold of a friend of his, who had provided him with a hotel room for the night. The UCO told Rogers if he was going to meet him and his brother that he should come to the Springhill Suites located in Brentwood, MO. Rogers indicated that he would be responding to the hotel and as such, detectives from the St. Louis County Police Department assembled at the hotel to await Roger's arrival.

19. At approximately 3:30 PM, Rogers arrived and responded to a designated room as directed by the UCO. Rogers was taken into custody as he knocked on the hotel room door. Rogers was advised that he was under arrest and was read his Miranda Rights. Rogers stated that he understood his rights and that he wanted to cooperate with the investigators. An inventory search of Rogers for property revealed that he was in the possession of marijuana, drug paraphernalia and a cellular telephone.

20. Rogers provided the investigators permission to review his cellular telephone. Rogers was asked about images of a girl that appeared under the age of 18 that he had recorded himself having sex with and that were stored on the cellular telephone. Rogers stated that it was a girl that he knew to currently be 18 years old, named "Lizzy" and that the video was made when she was 17. Rogers stated that he had met her when she was 16 years old, but did not engage in sexual conduct with her until she was 17.

21. Rogers agreed to take a polygraph exam. During this exam, Rogers failed portions concerning his sexual contact with children under the age of 15. Rogers was confronted about the failing of the polygraph exam. Rogers stated that he was not truthful about how old "Lizzy" was at the time of the recording of his sexual activity with her. Rogers stated that she was actually 16 at the time that he had sex and oral sex with her and the recording of the sex acts, but that she had lied about her age and that he then stopped having sex with her until she turned 17. Rogers was asked how many people that he had sent the images of "Lizzy" to and he stated no one. After being confronting with the fact that it was apparent from a review of his cellular telephone that he had sent out an image of "Lizzy", Rogers stated that he had accidentally sent it out one time in the past.

22. On 06/09/20, Sgt. Kavanaugh contacted Elizabeth Rommerskirchen (Victim, hereinafter referred to as Elizabeth R.) and her mother, Jennifer Haukap, at their residence. Upon learning of the investigation, Elizabeth R. became visibly upset. Elizabeth R. advised that she originally met Rogers when she was 16 years old. Elizabeth R. stated that she remembered they met in the Spring of 2017. Elizabeth R. advised that Rogers was aware of her age and she stated at that time Rogers told her that he was 18 years of age. Haukap interjected that she is positive Rogers knew how old Elizabeth R. was as she had told him to stay away from her daughter due to her age.

23. Sgt. Kavanaugh asked Elizabeth R. if she was in a sexual relationship with Rogers when she was 16 years old and she stated yes. Elizabeth R. advised that she started having sex with Rogers in the summer of 2017. Elizabeth R. stated that they would have sexual intercourse and they also performed oral sex on each other. Elizabeth R. stated this mainly happened at Rogers' sister's residence located in Illinois. Elizabeth R. advised that there videos and images of her and Rogers engaging in sexual acts. Elizabeth R. also advised that Rogers took pictures of her nude as well. Elizabeth R.

agreed to view videos and images retrieved from Rogers' phone and upon viewing them advised that it was her and Rogers depicted in them.

24. Elizabeth R. advised that she had communicated with Rogers frequently on the Facebook application over the last several years. Elizabeth R. directed Sgt. Kavanaugh to Rogers' Facebook Page. Sgt. Kavanaugh noted at that time that Rogers' Facebook Display Name was "Kenny Rogers" and the associated Facebook Account Identification Number 100036583601992. Elizabeth R. told Sgt. Kavanaugh that she believed that Rogers had communicated with other minors via the Facebook application and specifically knew that he had communicated with at least one underage boy.

I state under penalty of perjury the forgoing is true and accurate.

Respectfully submitted,

David Rapp
Special Agent
Federal Bureau of Investigation

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on the 4th day of September, 2020.

JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
**Property to Be Searched**

25. For the period **03/01/2017**, to the date this warrant is received: All messages and other information maintained by **Facebook Inc.** located at 1601 Willow Road Menlo Park, CA 94025 for the Facebook account registered to Facebook Account Identification Number **100036583601992**, for the time period of from **03/01/2017** to the date of this warrant, or logs or records including, but not limited to, to the following:

a. Any correspondence pertaining to the persuasion, inducement, and/or enticement of a minor to engage in any sexual act/contact, including all opened/unopened messages;

b. Any messages, opened or unopened, where the message or the content of the message indicates contact with individuals regarding the sexual exploitation of children including the production, transportation, receipt or possession of visual depictions of minors engaged in sexually explicit conduct;

c. Correspondence between these accounts and any other Facebook account where the content of the message discusses the sexual exploitation of a child including the production, transportation, receipt or possession of visual depictions of minors engaged in sexually explicit conduct, including all opened and unopened messages;

d. Any message, opened or unopened, and any image or video file involving the sexual exploitation of a child including the production, transportation, receipt or possession of visual depictions of minors engaged in sexually explicit conduct which is attached to the message;

e. Any file containing visual depictions of minors engaged in sexually explicit conduct;

f. Any message, opened or unopened, and any image file that appears to contain passwords or information regarding encryption;

g. Any and all transactional information, to include log files (transmission and usage), of all activity of the accounts which includes dates, time, method of connecting, port, dial-up, and/or location, originating Internet Protocol (IP) address and the destination IP address for all opened and unopened email, during the entire period that the account has been active, including buddy lists and terms of service violation reports;

h. Any records of subscriber information, method of payment, or detailed billing;

**i.** Copies of all the above from original storage on whatever form including printouts or digital format. The child pornography evidence should be sent by Federal Express to: **Federal Bureau of Investigation; Attn: SA David Rapp; 2222 Market Street; St. Louis, MO 63103**

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, ________________________________, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is ____________________________. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of __________ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c. such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

____________________________ ____________________________________________

Date Signature